UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIDESTRI FOODS, INC.,

                            Plaintiff,

                            Case # 17-CV-6146-FPG

v.

                            DECISION AND ORDER

7-ELEVEN, INC.,

                            Defendant.

## INTRODUCTION

Plaintiff LiDestri Foods, Inc. brings this action against Defendant 7-Eleven, Inc. for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and misrepresentation. ECF No. 9.

On March 10, 2017, the parties removed this action from New York State Supreme Court, County of Monroe, to this Court based on diversity jurisdiction. ECF No. 1; *see* 28 U.S.C. § 1332. On March 17, 2017, Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF Nos. 4, 5. On April 21, 2017, Plaintiff filed an Amended Complaint, which mooted Defendant's motion to dismiss. ECF Nos. 9, 10.

On June 2, 2017, Defendant moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). ECF Nos. 12, 13. On July 20, 2017, Plaintiff responded in opposition to the motion, and on August 14, 2017, Defendant filed reply papers. ECF Nos. 17, 18.

For the reasons that follow, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 12) is GRANTED IN PART and DENIED IN PART.

# RELEVANT FACTS[1]

LiDestri manufactures food, beverages, and spirits in Rochester, New York. ECF No. 9 at ¶ 6. During a 2015 sales visit, 7-Eleven told LiDestri that it was in the middle of "a major initiative" to introduce its franchisees to its own ice tea brand, "7-Select." *Id.* at ¶ 15. 7-Eleven told LiDestri that it was "looking for a partner" to develop new ice tea products "exclusively for 7-Eleven that would be marketed and sold exclusively under 7-Eleven's 7-Select Store Brand." *Id.* 7-Eleven told LiDestri that it "was in the unique and enviable position to become a long term profitable key partner of 7-Eleven" if it was "willing to agree to the initial ice tea program's aggressive pricing." *Id.* 7-Eleven represented that it would focus on marketing and selling the 7-Select ice tea over other brands. *Id.* at ¶ 16.

LiDestri "made clear to 7-Eleven, and 7-Eleven understood, that LiDestri could not afford and would not be interested in making the investment required to develop and efficiently produce ice tea for 7-Eleven stores unless 7-Eleven would commit to ensuring sufficient purchases of ice tea from LiDestri to make the project viable." *Id.* at ¶ 17. 7-Eleven agreed to make the requisite efforts to "achieve such levels of tea purchases." *Id.* at ¶ 18.

LiDestri was to provide 7-Eleven with "jug teas," which are half-gallon and gallon containers of the 7-Select ice tea. *Id.* at ¶ 19. 7-Eleven "insisted" on pricing for the jug teas that "would leave LiDestri very little, if any, profit margin." *Id.* at ¶ 20. When LiDestri objected to the pricing, 7-Eleven responded "in words or substance:" "Trust us, we know that LiDestri is a reputable company with a 40 year history, this is only the beginning of what will be a fantastic partnership." *Id.* at ¶ 21. 7-Eleven "promised" that, if LiDestri produced the jug teas in accordance

---

[1] The Court takes the following allegations from Plaintiff's Amended Complaint (ECF No. 9) and accepts them as true to evaluate Defendant's Motion to Dismiss.

with 7-Eleven's pricing scheme, 7-Eleven "would award LiDestri subsequent beverage and food programs that would be profitable and offset initial LiDestri investments" for this project. *Id.*

After "extended discussions in late 2014 and early 2015," LiDestri alleges that the parties agreed that:

    1.    LiDestri would develop and produce ice tea "exclusively" for sale as "7-Select Brand Tea;"

    2.    7-Eleven would tell LiDestri how much tea it must produce with a monthly schedule indicating how much tea it must deliver to the 7-Eleven franchisees' distributor to meet the ice tea demand;

    3.    LiDestri's output of the 7-Select tea would meet 7-Eleven's schedule; and

    4.    7-Eleven would "do all that was reasonably necessary"— *e.g.*, promote sales, advertise, market, and focus franchisee attention on this product line—to generate "sufficient franchisee demand" for the 7-Select tea so that the franchisees would purchase the tea volumes in 7-Eleven's demand schedule "within the accepted industry deviation" of five to ten percent.

*Id.* at ¶ 22.

On January 29, 2015, 7-Eleven employee Kyle Swayze sent LiDestri employee Tony Bash an email with a jug tea demand forecast. *Id.* at ¶¶ 23, 24; Exh. A. The next month, Swayze sent LiDestri an updated demand schedule. *Id.* at ¶ 24; Exh. B. Based on 7-Eleven's industry experience, LiDestri alleges that these schedules "should have been generally accurate" and that LiDestri "reasonably accepted" them as accurate. *Id.* LiDestri allegedly agreed to "undertake whatever expense necessary" to produce the 7-Select tea "at an approximate 95% fulfillment rate based on those schedules, which is customary and ordinary in that industry." *Id.* at ¶ 25.

LiDestri alleges that, "[i]n reasonable reliance on 7-Eleven's promises and demand schedules" and "pursuant to the agreement between them," it invested substantial time and money

in developing jug teas for 7-Eleven. *Id.* at ¶ 26. Specifically, LiDestri asserts that it upgraded a production line for over $1 million and spent "millions of dollars" on raw materials, bottles, labels, caps, and other packaging components. *Id.*

According to LiDestri, 7-Eleven's 2015 jug tea demand schedule was "extraordinarily inaccurate" and the franchisees only purchased 10 percent of the demand schedule amount from LiDestri. *Id.* at ¶ 27. LiDestri alleges that 7-Eleven's 2015 demand schedule "could not have been made in good faith" because it "was so grossly inaccurate." *Id.* at ¶ 28. LiDestri claims that 7-Eleven must have made the demand schedule to "mislead" LiDestri so it would invest in the 7-Select tea, or with "reckless indifference" as to the schedule's accuracy. *Id.*

After "[f]ully acknowledging that the [jug tea] program had been a complete financial disaster for LiDestri," 7-Eleven offered LiDestri a second program of organic tea. *Id.* at ¶ 29. Swayze sent LiDestri demand schedules for this program on December 19, 2015. *Id.* at ¶ 30; Exh. C. 7-Eleven allegedly "promised that this time it was going to be different" and that it "would go to greater lengths than before and would generate the scheduled demand." *Id.* LiDestri and 7-Eleven negotiated a price for the organic tea program that would position LiDestri "to make a fair, modest margin as long as the projected demand would finally materialize and LiDestri would be shipping the products in truck load quantities only." *Id.* at ¶ 31.

LiDestri asserts that 7-Eleven's 2016 organic tea demand schedule "proved almost as misleading as the 2015 demand schedule" and the franchisees only purchased approximately 20 percent of the organic tea demand schedule amount from LiDestri. *Id.* at ¶ 32. LiDestri again alleges that the 2016 demand schedule "could not have been made in good faith" because it "was so grossly inaccurate," and that it must have been made "with intent to continue to mislead LiDestri or with reckless indifference to its accuracy." *Id.* at ¶ 33.

4

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**DISCUSSION**

**I.     Consistency between the Complaint and Amended Complaint**

As an initial matter, 7-Eleven argues that the Court should reject certain allegations in LiDestri's Amended Complaint because they "contradict the allegations of the original complaint." ECF No. 13 at 7. Specifically, 7-Eleven takes issue with the fact that LiDestri's original Complaint described 7-Eleven's communications regarding the anticipated jug tea purchases as "projections," while the Amended Complaint uses the phrase "demand schedules." *Id.* at 6. 7-Eleven also argues that "LiDestri tries to circumvent the law . . . by blatantly changing it story" because its Amended Complaint, unlike its original Complaint, "now claims there was in fact a 'verbal agreement.'" *Id.*

It is true that "[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (citation, quotation marks, and alterations omitted).

However, the Court disagrees with 7-Eleven's assertion that LiDestri "blatantly changed its story" from the original Complaint to the Amended Complaint. Using the phrase "demand schedules" instead of "projections" does not substantially change LiDestri's allegation that 7-Eleven's jug tea forecasts were inaccurate. Moreover, although the original Complaint does not describe the contract in as much detail as the Amended Complaint, the original Complaint alleges that "[t]here was a contract between LiDestri and 7-Eleven based on their conduct and various communications between them." ECF No. 1 at ¶ 43. Both complaints allege the same obligations: that LiDestri was to produce the amount of tea set forth in the demand schedules and that 7-Eleven would make reasonable efforts to generate franchisee demand to meet those schedules. ECF No. 1 at ¶¶ 17, 24, 26; ECF No. 9 at ¶¶ 18, 22.

Accordingly, the Court accepts the allegations in LiDestri's Amended Complaint as true to evaluate 7-Eleven's Motion to Dismiss.

**II.     Breach of Contract**

7-Eleven argues that LiDestri's breach of contract claim must be dismissed because LiDestri failed to allege the existence of a valid contract. ECF No. 13 at 8-13. The Court disagrees.

A breach of contract claim under New York law requires a plaintiff to allege: (1) the existence of a valid contract; (2) adequate performance by the plaintiff; (3) breach by the defendant; and (4) damages caused by that breach. *See, e.g.*, *Diesel Props S.r.l. v. Greystone Bus.*

*Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). To plead these elements and survive a motion to dismiss, the plaintiff "must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Niagara Restitution Servs., Inc. v. Degen*, No. 15-CV-580-FPG, 2016 WL 3004665, at *3 (W.D.N.Y. May 23, 2016) (citations omitted).

First, as to the existence of a valid contract, LiDestri alleges that it had a "verbal agreement" with 7-Eleven. ECF No. 9 at ¶ 35. Specifically, LiDestri alleges that after "extended discussions in late 2014 and early 2015," the parties agreed that:

1. LiDestri would develop and produce ice tea "exclusively" for sale as "7-Select Brand Tea;"

2. 7-Eleven would tell LiDestri how much tea it must produce with a monthly schedule indicating how much tea it must deliver to the 7-Eleven franchisees' distributor to meet the ice tea demand;

3. LiDestri's output of the 7-Select tea would meet 7-Eleven's schedule; and

4. 7-Eleven would "do all that was reasonably necessary"— *e.g.*, promote sales, advertise, market, and focus franchisee attention on this product line—to generate "sufficient franchisee demand" for the 7-Select tea so that the franchisees would purchase the tea volumes in 7-Eleven's demand schedule "within the accepted industry deviation" of five to ten percent.

*Id.* at ¶ 22.

These allegations are sufficient because they indicate that LiDestri and 7-Eleven entered into a single verbal agreement in late 2014 and early 2015, and they specifically describe the terms of that agreement. *See Niagara Restitution Servs., Inc.*, 2016 WL 3004665, at *3 (noting that a breach of contract claim must indicate "whether there was actually one contract or multiple

7

contracts, whether the contract was oral or written, express or implied, who the actual parties to the contract were, or when the contract was entered into")).

Second, LiDestri alleges that it adequately performed under the contract by investing time and money to develop a new tea product exclusively for 7-Eleven and by actually producing the tea. ECF No. 9 at ¶¶ 26, 36. Third, LiDestri specifically alleges that 7-Eleven breached the terms of the above agreement by "fail[ing] to make the marketing, advertising, and sales efforts reasonably required to ensure that LiDestri ice tea was acquired in the volumes set forth in the 7-Eleven demand schedules." *Id.* at ¶ 37. Finally, LiDestri alleges that it suffered harm from the breach because it had to "destroy expired ingredients and materials" and incurred "substantial out of pocket expenses." *Id.* at ¶¶ 38-42.

At this stage, these allegations are sufficient to state a breach of contract claim. Accordingly, 7-Eleven's Motion to Dismiss this cause of action is DENIED.

### III. Good Faith and Fair Dealing[2]

7-Eleven argues, among other reasons, that LiDestri's breach of the implied covenant of good faith and fair dealing claim should be dismissed because it is duplicative of LiDestri's breach of contract claim. ECF No. 18 at 9-11. The Court agrees.

Contracts under New York law contain an implied covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Thyroff v. Nationwide*

---

[2] LiDestri does not explicitly label its second cause of action as one for breach of the covenant of good faith and fair dealing. However, its response in opposition to 7-Eleven's Motion to Dismiss clarifies that "[f]or its second breach claim, LiDestri asserts a breach of the implied covenant of good faith and fair dealing in general, and a heightened good faith obligation due to the circumstances alleged." ECF No. 17 at 17; ECF No. 9 at ¶¶ 43-48. Thus, the Court analyzes the second cause of action as one for breach of the implied covenant of good faith and fair dealing.

*Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)). This covenant "includes an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." *Id.* (quoting *Kader v. Paper Software Inc.*, 111 F.3d 337, 342 (2d Cir. 1997)).

Although parties to an express contract are bound by this implied duty, "breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (citation omitted). "Where . . . 'a breach of contract claim, based upon the same facts, is also pled,' New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing.'" *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 265 (E.D.N.Y. 2016) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F. 3d 115, 125 (2d Cir. 2013)). Accordingly, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

Here, LiDestri does not allege that 7-Eleven intentionally and purposely prevented it from carrying out the agreement. Instead, LiDestri alleges that 7-Eleven breached the implied covenant of good faith and fair dealing by failing to "make commercially reasonable efforts to create greater demand for the tea in 7-Eleven stores and their customers." ECF No. 9 at ¶¶ 46-47. LiDestri also alleges that 7-Eleven owed it "a heightened duty to act in good faith" because LiDestri created a "unique tea product" for 7-Eleven that it could not "sell to others in the normal course of business." *Id.* at ¶¶ 44-46. Similarly, LiDestri's breach of contract claim alleges that 7-Eleven "failed to make the marketing, advertising, and sales efforts reasonably required to ensure that LiDestri ice tea was acquired in the volumes set forth in the 7-Eleven demand schedules." *Id.* at ¶ 37.

The same allegations underlie LiDestri's breach of contract claim and its breach of the implied covenant of good faith and fair dealing claim, *i.e.*, that 7-Eleven failed to make the appropriate effort to achieve the jug tea demand set forth in the schedule. Accordingly, LiDestri's breach of the implied covenant of good faith and fair dealing claim is duplicative of its breach of contract claim. Accordingly, 7-Eleven's Motion to Dismiss this claim is GRANTED.

## IV.  Promissory Estoppel[3]

7-Eleven argues that LiDestri's promissory estoppel claim must be dismissed because LiDestri has not alleged "an oral promise that is sufficiently clear and unambiguous." ECF No. 14 at 13-14. The Court disagrees.

A plaintiff must prove three elements for a promissory estoppel claim under New York law: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *5 (S.D.N.Y. Sept. 20, 2007) (citations omitted).

LiDestri makes several allegations demonstrating that 7-Eleven made a clear and unambiguous promise to focus its efforts on generating 7-Select tea demand. Specifically, LiDestri alleges that 7-Eleven "represented" that it would prioritize marketing and selling 7-Select tea over other brands so that 7-Select tea would comprise the majority of its ice tea sales. ECF No. 9 at ¶ 16. LiDestri also alleges that 7-Eleven "agreed to make those efforts required to achieve such levels of tea purchases" and that 7-Eleven "assured" LiDestri that it knew how to create significant

---

[3] The Court notes that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 654 (E.D.N.Y. 2012) (citation omitted). In this case, however, LiDestri may continue its promissory estoppel claim because 7-Eleven disputes the existence of a contract. *See id.* (citing *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578, 2010 WL 1257326, at *9 (S.D.N.Y. Mar. 12, 2010) ("[W]here Defendants dispute the existence of a valid, enforceable contract, Plaintiffs are permitted to proceed on both contractual and quasi-contractual theories.")). Thus, LiDestri's promissory estoppel claim is not barred at this stage merely because it also asserts a breach of contract claim.

franchisee demand. *Id.* at ¶ 18. LiDestri also alleges that "[d]uring their discussions" about the 7-Select tea, "7-Eleven promised to do all that was reasonably required to achieve the volumes of LiDestri tea purchases set forth in [the] demand schedules." *Id.* at ¶ 50.

LiDestri also alleges that it reasonably and foreseeably relied on 7-Eleven's promises. Specifically, LiDestri alleges that 7-Eleven "insisted" and LiDestri "agreed" that, once it received the official demand schedules, LiDestri "would undertake whatever expense necessary . . . to fulfill its obligations to produce" the 7-Select tea in accordance with the schedules. *Id.* at ¶ 25. LiDestri also alleges that it actually relied on 7-Eleven's promises by making "substantial" investments of time and money to develop the 7-Select tea. *Id.* at ¶¶ 26, 51.

Finally, LiDestri alleges that it suffered harm by relying on 7-Eleven's promises because it had to "destroy expired ingredients and materials" and incurred "substantial out of pocket expenses." *Id.* at ¶¶ 38-42.

Accordingly, the Court finds that LiDestri has adequately stated a claim for promissory estoppel, and 7-Eleven's Motion to Dismiss this claim is DENIED.

**V.     Misrepresentation**

Defendant argues that LiDestri's misrepresentation claim should be dismissed because the alleged misrepresentations—*i.e.*, 7-Eleven's prediction of future tea purchases—were predictions of future events and not statements of present or past facts. ECF No. 13 at 15. Defendant also argues that LiDestri's misrepresentation claim fails because it does not comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.*

It is unclear whether LiDestri's fourth cause of action is for intentional or negligent misrepresentation; however, the claim fails either way. Both causes of action require that the defendant made a false representation. *See Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681

F. Supp. 2d 340, 347-48 (E.D.N.Y. 2010) (reciting the elements of an intentional misrepresentation claim under New York law); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (reciting the elements of a negligent misrepresentation claim under New York law). This allegedly false representation must be factual and not merely promissory or related to future events. *See Philips Credit Corp. v. Regent Health Grp., Inc.*, 953 F. Supp. 482, 520 (S.D.N.Y. 1997) (noting that "a claim of intentional misrepresentation cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct, because mere unfulfilled promissory statements as to what will be done in the future are not actionable") (citation, quotation marks, and alteration omitted); *Hydro Investors, Inc.*, 227 F.3d at 20-21 (noting that "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition" to state a claim for negligent misrepresentation).

LiDestri's misrepresentation claim is based on the inaccuracy of 7-Eleven's jug tea demand schedules. ECF No. 9 at ¶¶ 56-63. Specifically, LiDestri alleges that 7-Eleven could make "reasonably accurate demand schedules" because it had "sole access" to the requisite information and "extensive experience as the largest beverage outlet in the world." *Id.* at ¶¶ 57-58. LiDestri asserts that 7-Eleven "frequently misleads its suppliers" regarding product demand and that, because the jug tea demand schedules were off by 80 to 90 percent, 7-Eleven engaged in "negligent, reckless, or intentional misleading." *Id.* at ¶¶ 61-62. LiDestri does not allege that 7-Eleven made any factually false representations.

Although LiDestri does not allege that 7-Eleven made any factually false representations, it can still state a claim for intentional misrepresentation by alleging that "at the time the promise was made [7-Eleven] had no intention of carrying it out." *See Philips Credit Corp.*, 953 F. Supp.

12

at 520. However, LiDestri makes no such allegation—although it alleges that 7-Eleven "failed to honor its promise," it does not allege that 7-Eleven did not intend to meet the demand schedules when it created them. *See id.* (noting that "fraudulent intent not to perform a promise cannot be inferred merely from the fact of nonperformance, and additional proof is required") (citation and alteration omitted).

Moreover, LiDestri's misrepresentation claim fails because it does not meet the pleading requirements of Rule 9(b). "[C]ourts in the Second Circuit have applied Rule 9(b) . . . to claims of both intentional and negligent misrepresentation, requiring that these claims be 'stated with particularity.'" *Liberty Mut. Ins. Co.*, 681 F. Supp. 2d at 348 (quoting Fed. R. Civ. P. 9(b)) (other citations omitted). The Second Circuit has held that Rule 9(b) requires the plaintiff to: (1) specify the statements that he contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Id.* (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). LiDestri's misrepresentation claim does not meet this standard—it lacks the requisite specificity and therefore cannot survive.[4]

Accordingly, 7-Eleven's Motion to Dismiss LiDestri's misrepresentation claim is GRANTED.

---

[4] Although LiDestri did not formally move to amend in accordance with Local Rule of Civil Procedure 15, its response to 7-Eleven's motion requests leave to file a second amended complaint that would "provide the identity of the principle negotiators . . . and additional information regarding the locations and dates of the late 2014/early 2015 discussions." ECF No. 17 at 25. Even if these facts could make LiDestri's misrepresentation claim compliant with Rule 9(b), amendment would be futile because this claim would still rely on an allegedly fraudulent promise or future prediction and not on any *fact*. Accordingly, LiDestri may not file a third complaint in this action. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that the Court may properly deny leave to amend pleadings where amendment would be futile).

## CONCLUSION

Defendant's Motion to Dismiss the Amended Complaint (ECF No. 12) is GRANTED IN PART and DENIED IN PART. Plaintiff's breach of the implied covenant of good faith and fair dealing and misrepresentation claims are DISMISSED, but Plaintiff's breach of contract and promissory estoppel claims may proceed.

IT IS SO ORDERED.

Dated: March 21, 2018
Rochester, New York

								_____
								HON. FRANK P. GERACI, JR.
								Chief Judge
								United States District Court