UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIDESTRI FOODS, INC.,

Plaintiff,

-vs.-

7-ELEVEN, INC.,

Defendant.

Civil Action No. 6:17-cv-06146-FPG-JWF

## DEFENDANT 7-ELEVEN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Dated: August 1, 2019

ARNOLD & PORTER KAYE SCHOLER LLP

James F. Speyer
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Phone (213) 243-4000
james.speyer@arnoldporter.com

Matthew D. Grant
250 West 55th Street
New York, New York 10019-9710
Phone (212) 836-8000
matthew.grant@arnoldporter.com

*Attorneys for Defendant 7-Eleven, Inc.*

165099572

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ........................................................................... 1

SUMMARY OF THE SAC'S ALLEGATIONS ................................... 4

ARGUMENT................................................................................. 6

   I.   THE SAC FAILS TO STATE AN ORAL CONTRACT CLAIM ............... 6

      A. LiDestri's Oral Contract Claim is Barred by the Express Terms of the Written Contract that it Signed............................................... 6

      B. Even if the Written Contract is Not Binding on LiDestri, LiDestri has No Oral Contract Claim Because the Parties Made Clear They Intended to be Bound Only by a Written Agreement ....................................... 9

  II.  THE SAC FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .........14

 III.  THE SAC FAILS TO STATE A PROMISSORY ESTOPPEL CLAIM......15

CONCLUSION .............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjustrite Systems, Inc. v. GAB Business Services, Inc.*,
    145 F.3d 543 (2d Cir. 1998)........................................................10, 13

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
    884 F.2d 69 (2d Cir. 1989)........................................................11, 12

*Bader v. Wells Fargo Home Mortg. Inc.*,
    773 F. Supp. 2d 397 (S.D.N.Y. 2011) ...........................................15

*CAC Group Inc. v. Maxim Group LLC*,
    523 Fed. Appx. 802 (2d Cir. 2013) ....................................11, 12, 13

*Capricorn Investors III, L.P. v. Coolbrands Intern., Inc.*,
    886 N.Y.S.3d 158 (N.Y. App. Div. 1st Dept. 2009) ........................16

*Ciaramella v. Reader's Digest Assoc., Inc.*,
    131 F.3d 320 (2d Cir. 1997)........................................................11, 13

*Cornhusker Farms, Inc. v. Hunts Point Cooperative Market, Inc.*,
    769 N.Y.S.2d 228 (N.Y. App. Div. 1st Dept. 2003) .........................7

*Doherty v. New York Telephone Co.*,
    609 N.Y.S.2d 306 (N.Y. App. Div. 2d Dept. 1994)..........................6

*Holloway v. King*,
    161 Fed. Appx. 122 (2d Cir. 2005) ................................................7

*Kaczmarcysk v. Dutton*,
    414 Fed. Appx. 354 (2d Cir. 2011) ..........................................10, 11

*Kargo, Inc. v. Pegaso PCS, S.A. DE C.V.*,
    Case No. 05 Civ. 10528(CSH)(DFE),
    2008 WL 4579758 (S.D.N.Y. Oct. 14, 2008).................................12

*Kowalchuk v. Stroup*,
    873 N.Y.S.3d 43 (N.Y. App. Div. 1st Dept. 2009) ....................7, 8, 9

165099572

*Randall's Island Aquatic Leisure, LLC v. City of New York*,
    938 N.Y.S.2d 62 (N.Y. App. Div. 1st Dept. 2012) ............................................14

*R.G. Group, Inc. v. Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984) .................................................... 9, 10, 12, 13, 15, 16

*RKG Holdings, Inc. v. Simon*,
    Case No. 98-9433, 1998 WL 464979 (2d Cir. June 23, 1999) ...................10, 11

*Security Plans, Inc. v. CUNA Mut. Ins. Soc.*,
    769 F.3d 807, 816 (2d Cir. 2014) ....................................................................15

*Shah v. Micro Connections, Inc.*,
    729 N.Y.S.2d 497 (N.Y. App. Div. 2d Dept. 2001) ...........................................7

*Wilson v. Dantas*,
    -- N.Y.S.3d --, 173 A.D.3d 460 (N.Y. App. Div. 1st Dept. 2019) ....................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1

iv

Defendant 7-Eleven, Inc. ("7-Eleven"), by and through its undersigned counsel, hereby submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint ("SAC") of Plaintiff LiDestri Foods, Inc. ("LiDestri") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

For over two years, LiDestri has forced 7-Eleven to defend a lawsuit based on the claim that 7-Eleven breached an oral agreement under which it guaranteed that 7-Eleven franchisees would buy certain projected volumes of LiDestri's iced tea products.  Thus, LiDestri's complaint centered on an alleged "verbal agreement" regarding the purported guaranteed-purchase obligation.  Doc. 9, ¶ 34. And the Court's March 22, 2018 Decision and Order allowed a breach-of-contract claim and a promissory estoppel claim based on the alleged verbal agreement to advance beyond the pleading stage.  Doc. 19.

Now, in a head-spinning turn of events, LiDestri has filed a new complaint admitting the existence of a subsequent *written agreement, signed by an authorized representative of LiDestri*, concerning LiDestri's iced tea products.  Doc. 44.  In a masterpiece of understatement, LiDestri further admits that this contract "differed materially" from the alleged oral agreement.  *Id.* ¶ 76.  But the written contract doesn't just "differ[] materially" from the alleged oral agreement -- it *expressly*

---

[1] A copy of the SAC is attached hereto as Exhibit A.

*disclaims* the alleged guaranteed-purchase obligation, and *also* has a merger clause that forecloses any reliance on prior oral agreements, representations or understandings.  That written  contract (the "Proprietary Product Purchase and Distribution Agreement" or "PPP"), which is attached to the SAC, states that "*[n]o quantities of Products are specifically ordered by this agreement*" and "*[n]either 7-Eleven nor the Stores are obligated to purchase any minimum or ongoing quantity of Products under this Agreement.*"  SAC, Ex. D ¶ 6.01 (italics added).  It further states that:

> This Agreement including the attached Exhibits *constitutes the entire Agreement between the parties* pertaining to the subject matter contained in it and *supersedes all prior and contemporaneous, written or oral, agreements, representations and understandings of the parties.*  The parties acknowledge and agree that *there are no other representations, agreements and understandings* pertaining to the subject matter herein that the parties have relied on in entering into this Agreement other than those stated in this Agreement.

*Id.* ¶ 2.01 (italics added).

The PPP accordingly demolishes any claim by LiDestri based on the alleged oral agreement, and establishes that LiDestri has put 7-Eleven through two-plus years of baseless litigation.[2]

---

[2] 7-Eleven is trying to determine, through focused discovery requests, what inquiry (if any) LiDestri undertook to determine whether a written contract existed before it initiated this lawsuit.  LiDestri has refused to provide any information in response to those requests.

Remarkably, the SAC continues to allege claims based on the purported oral agreement.  Those claims are meritless as a matter of law and should be dismissed now for two reasons.

First, the PPP's merger clause bars any claim based on an alleged oral agreement or promise.  *See infra* at 6-9.  While LiDestri contends that the PPP is unenforceable because only LiDestri signed it, that argument fails because LiDestri's signature on the PPP is the clearest possible indication that LiDestri intended to be bound by the merger clause.  Courts routinely enforce contracts against the signing party, even if the counter-party did not sign.

Second, even if the PPP is not enforceable against LiDestri, the merger clause in it nevertheless reflects an unmistakable intention that the parties did not intend to be bound by any oral agreement.  Under controlling Second Circuit law, purported oral agreements have no force or effect where the parties have manifested their intent to be bound only by a written contract -- even if *neither* party has signed the contract.  Courts within the Second Circuit apply this principle to dismiss breach-of-oral-contract complaints at the pleading stage.  *Id.* at 9-13.

For these reasons, 7-Eleven seeks dismissal of the first three causes of action in the SAC, all of which are based on 7-Eleven's alleged oral agreement.  (The remaining claim in the SAC is an "alternative" claim for breach of the PPP, which LiDestri says it will pursue if the Court finds that the PPP is enforceable).

3

## SUMMARY OF THE SAC'S ALLEGATIONS

LiDestri is a "premier private label and contract manufacturer of food, beverages and spirits, supplying over 50 million cases of product each year."  SAC ¶ 6.  7-Eleven is a franchisor of convenience stores throughout the United States. *Id*.  ¶ 7.  According to the SAC, 7-Eleven and LiDestri reached an oral agreement "following extended discussions in late 2014 and early 2015."  SAC ¶ 24.  Under the alleged agreement, 7-Eleven (1) provided "schedules" of the amount of iced tea LiDestri would need to produce "to meet the [7-Eleven] franchisees' demand for ice tea," (2) LiDestri agreed to "meet the 7-Eleven schedules," and (3) 7-Eleven "agreed to do all that was reasonably necessary…to generate sufficient franchisee demand for the LiDestri ice tea products so that the volumes of ice tea set forth on the 7-Eleven demand schedules would be purchased…."  *Id.*  7-Eleven then supposedly breached this alleged oral agreement by failing to make the "efforts reasonably required to ensure that LiDestri ice tea was acquired in the volumes set forth in the 7-Eleven demand schedules." *Id.* ¶ 44.

The foregoing mirrors the allegations in LiDestri's previous complaint. But, in a totally new set of allegations, the SAC also asserts that "LiDestri and 7-Eleven started negotiating a written agreement between them" in "late 2014" -- in other words, at precisely the same time they were allegedly discussing an oral agreement concerning the same subject matter.  *Id.* ¶ 70.  These negotiations "went

4

on for months and involved at least four drafts of the PPP." *Id.* ¶ 71. The drafts "differed materially from the parties' verbal agreement…." *Id.* ¶ 76. Notwithstanding these material differences, LiDestri "decided to authorize [a representative] to sign Draft 4 of the PPP" based on its "belie[f]" that "even if the parties adopted the PPP," 7-Eleven "would perform … in conformance with the shared expectations of the parties as expressed in their verbal agreement…." *Id.* ¶ 77. The SAC does not explain how LiDestri could reasonably hold this belief given the extreme variance between the alleged verbal agreement and the PPP.

The PPP is an 18-page single-spaced document, exclusive of exhibits. Its very first substantive page contains the merger clause quoted above, underneath the heading "ENTIRE AGREEMENT." SAC, Ex. D at 3. It also contains the aforementioned provisions stating that "*[n]o quantities of Products are specifically ordered by this agreement*" and "*[n]either 7-Eleven nor the Stores are obligated to purchase any minimum or ongoing quantity of Products under this Agreement.*" *Id.* ¶ 6.01 (italics added). The PPP contains dozens of other provisions that are not part of the alleged oral agreement, including provisions concerning product specifications, indemnification, representations and warranties, and insurance.

The SAC purports to assert a claim for breach of oral contract (the first cause of action), a claim for breach of the employed covenant of good faith and fair dealing based on the alleged oral contact (the second cause of action), a claim

5

for promissory estoppel based on the same alleged oral promise by 7-Eleven (the third cause of action), and an "alternative" claim for breach of the PPP (the fourth and last cause of action).

## ARGUMENT

## I.     THE SAC FAILS TO STATE AN ORAL CONTRACT CLAIM

### A.     LiDestri's Oral Contract Claim is Barred by the Express Terms of the Written Contract that it Signed

LiDestri signed a formal, written contract -- the PPP -- that contains an "ENTIRE AGREEMENT" provision.  This provision expressly "supersedes all prior and contemporaneous, written or oral, agreements, representations and understandings of the parties."  SAC, Ex. D ¶ 2.01.  Moreover, the PPP flatly contradicts the alleged oral promise that forms the basis for LiDestri's oral contract claim.

Long-settled contract law bars oral contract claims in these circumstances. As the court stated in *Doherty v. New York Telephone Co.*, 609 N.Y.S.2d 306, 307 (N.Y. App. Div. 2d Dept. 1994):

> The cause of action alleging breach of an oral agreement between the parties is not actionable.  A subsequent written agreement lucidly manifests the parties' intent that the written agreement supersede the oral agreement and that it constitute the entire agreement between the parties.  Since the written agreement is clear and complete on its face, the operation of the parol evidence rule effectively bars any action to enforce the oral agreement.

6

*See also, e.g., Holloway v. King*, 161 Fed. Appx. 122, 124-25 (2d Cir. 2005) ("the integration clause prohibits the court from considering any oral contract that was allegedly made prior to the written agreement, since parol evidence to vary, contradict, or supplement the terms of a fully integrated agreement is not admissible."); *Cornhusker Farms*, *Inc. v. Hunts Point Cooperative Market, Inc.*, 769 N.Y.S.2d 228, 230 (N.Y. App. Div. 1st Dept. 2003) ("The Subscription Agreement's strict merger clause and no-oral-modification clause establish that it is an integrated writing, and, as a matter of law, bar any claim based on an alleged agreement … that the parties failed to express either in the Subscription Agreement or in a signed written amendment."); *Shah v. Micro Connections, Inc.*, 729 N.Y.S.2d 497, 498 (N.Y. App. Div. 2d Dept. 2001) ("Where there is a conflict between an express provision in a written contract and an alleged oral agreement, the oral agreement is unenforceable.").

LiDestri asserts that the PPP is "not a binding contract" because 7-Eleven did not sign it.  SAC ¶ 96.  This puts LiDestri in the difficult position of arguing that it should not be bound by a contract it voluntarily signed.  The general rule is that a contract is enforceable against the signing party, even if it is not signed by the counter-party.  *Kowalchuk v. Stroup*, 873 N.Y.S.3d 43, 49 (N.Y. App. Div. 1st Dept. 2009) (written contract enforced against signing party even though counter-party did not sign).  The rationale for the rule is that the party's signature

7

conclusively demonstrates that party's intention to be bound by the contract. *Bild v. Konig*, Case No. 09-CV-5576 (ARR) (VVP), 2012 WL 13109964, *14 (E.D.N.Y. Dec. 20, 2012) (parties' "self-serving statements" that they did not intend to be bound by a written contract are belied by the fact that they signed the contract).

An exception to this rule holds that a contract will not be binding (even against the signing party) if clear and objective indications evidence an intent that it not bind either party unless both parties sign. *Kowalchuk*, 873 N.Y.S.3d at 47. However, LiDestri may not take advantage of this exception, because no such indications exist here. For instance, the parties could easily have included a provision stating that "This contract will not become effective until both parties sign it." They did not do so.

LiDestri asserts that the PPP contains "multiple provisions evidencing the parties' intent that both parties had to sign it…[for it to be enforceable against either party]." SAC ¶¶ 95, 96. But an examination of these provisions do not reveal any such intent. LiDestri cites three of the PPP's provisions: (1) that it "is made and effective as of the…Effective Date" and was "executed by their duly executed officers or representatives as of the Effective Date," (2) that the parties "warrant and represent that the execution and performance of such party to the Agreement will not interfere, violate or conflict [with other contractual

obligations]," and (3) that it "may be amended only by the mutual written agreement of the parties…." *Id.* ¶ 95.  None of these provisions states, or even suggests, that the PPP will not bind a party that signs it unless both parties have signed it.

Indeed, in *Kowalchuk*, the court held that not even a provision stating that "[t]he Agreement is complete and binding upon its execution by all signatories" indicates an intent that the contract would not be binding until executed by both sides, because the provision "is not the equivalent of a provision that it is *not* binding *until* it has been so executed."  873 N.Y.S.2d at 49 (emphasis in original). If the *Kowalchuk* provision is not evidence of the requisite intent, certainly none of the provisions cited by LiDestri are either.

> B.   Even if the Written Contract is Not Binding on LiDestri, LiDestri has No Oral Contract Claim Because the Parties Made Clear They Intended to be Bound Only by a Written Agreement

This Court need not determine whether the PPP is enforceable against LiDestri in order to dismiss the oral contract claims.  That is because whether the alleged oral agreement is actionable does not depend on whether the PPP is enforceable.  Instead, what matters is "whether the parties' words and deeds, within a given bargaining context, show an intent to be bound only by a written agreement."  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir.

1984).  "When a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent."  *Id.*

These principles require dismissal of the oral contract claim because the SAC's factual allegations, coupled with the terms of the PPP that is part of the SAC, unmistakably establish that the parties intended to be bound only by a written agreement.  Numerous Second Circuit decisions have applied these principles to dismiss oral contract claims -- including at the pleading stage -- even when *neither* party had signed a written contract.  Where, as here, the party claiming an oral contract actually signed a written agreement disclaiming any oral contract, the basis for dismissal of the oral contract claim is that much stronger.

The Second Circuit looks at four factors "in determining whether the parties intended to be bound in the absence of a writing."  *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354, 355 (2d Cir. 2011).  Those factors are "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged [oral] contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Id.*  The first factor is "'the most important.'"  *Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543, 549 (2d Cir. 1998).  Indeed, "[i]n the event that there is a writing between the parties 'show[ing] that [one party] did not intend to be

10

bound,' ... '*a court need look no further than the first factor.*'"  *RKG Holdings, Inc.*

*v. Simon*, Case No. 98-9433, 1998 WL 464979, *1 (2d Cir. June 23, 1999) (quoting

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989))

(emphasis added).

      This Court "need look no further than the first factor" because the merger

clause of the PPP unambiguously shows that the parties did not intend to be bound

by any alleged oral agreement -- especially not an oral agreement that directly

contradicts the terms of the written agreement.  In *Ciaramella v. Reader's Digest*

*Assoc., Inc.*, the Second Circuit held that although neither party had signed a

written agreement, "[t]he presence of …a merger clause [in the draft agreement] is

persuasive evidence that the parties did not intend to be bound prior to the

execution of a written agreement."  131 F.3d 320, 324 (2d Cir. 1997)*; see also*

*Kaczmarcysk*, 414 Fed. Appx. at 355 (same); *CAC Group Inc. v. Maxim Group*

*LLC*, 523 Fed. Appx. 802, 805 (2d Cir. 2013) (same; affirming dismissal of oral

contract claim on motion to dismiss).  Here, of course, there is not simply a draft

agreement with a merger clause -- there is an agreement *signed by LiDestri* with a

merger clause.

      Although the Court "need look no further" to dismiss the oral contract claim,

each of the three additional factors examined by the Second Circuit also supports

dismissal.

*Partial performance*.  At paragraphs 72-75 of the SAC, LiDestri alleges as partial performance of the purported oral contract a number of actions that it took, including "developing the unique teas," "building a new production line," and "production of the 7-Eleven teas."  But as the Second Circuit made clear in dismissing an oral contract claim on a motion to dismiss, a party "cannot rely on its own effort to perform as an indication that [the other party] intended to be bound." *CAC Group*, 523 Fed. Appx. at 805.  Instead, partial performance is a factor only "when 'one party has partially performed, *and that performance has been accepted by the party disclaiming the contract*.'"  *Id.*  (emphasis in original) (quoting *R.G. Group*, 751 F.2d at 75).  The SAC does not allege that 7-Eleven "accepted" any performance from LiDestri.  In any event, "the second factor of partial performance is not dispositive, and in some cases it is given little weight."  *Kargo, Inc. v. Pegaso PCS, S.A. DE C.V.*, Case No. 05 Civ. 10528(CSH)(DFE), 2008 WL 4579758, *9 (S.D.N.Y. Oct. 14, 2008)*; see also Arcadian*, 884 F.2d at 73 (judgment for defendant dismissing oral contract claim "perfectly appropriate" even though there was "considerable partial performance" because question of intent was determinable by the first factor).

*Whether all of the terms of the alleged contract have been agreed upon*. This factor examines whether there was "literally nothing left to negotiate…so that all that remained to be done was to sign what had already been agreed to."  *R.G.*

*Group*, 751 F.2d at 76.  Here, the 18-page written agreement included many more terms and conditions than the alleged oral agreement contained.  *See supra* at 5.  It also, by LiDestri's own admission, "differed materially" from the alleged oral agreement.  SAC ¶ 76.  Thus, the parties had not orally "agree[d] on all the points that require negotiation."  *Adjustrite*, 145 F.3d at 548; *see also Ciaramella*, 131 F.3d at 325 ("the existence of even 'minor' or 'technical' points of disagreement in draft settlement documents were sufficient to forestall the conclusion that a final agreement on all terms had been reached.")

   *Whether the agreement at issue is the type of contract that is usually committed to writing.*  This is manifestly the type of contract that commercial entities commit to writing.  In addressing this factor, courts examine the magnitude and complexity of the deal.  *Ciaramella*, 131 F.3d at 326.  LiDestri put "millions of dollars at risk" (SAC ¶ 1) and seeks "over $3,000,000 in damages" (*id.* ¶ 5), and the PPP consists of over eighty paragraphs and sub-paragraphs governing dozens of issues and contingencies.  The idea that this agreement would need to be governed by a written contract "simply cannot be a surprise to anyone."  *R.G. Group,* 751 F.2d at 77; *see CAC Group Inc.*, 523 Fed. Appx. at 805 ("It is not reasonably disputable that a contract concerning substantial amounts of money or complex matters between sophisticated businesses is usually committed to writing").

13

\*            \*            \*

As detailed above, the allegations in LiDestri's SAC and the language of the PPP demonstrate that the parties intended to be bound only by a written contract and not any prior oral agreement. Under controlling Second Circuit authority, this bars LiDestri's oral contract claim -- even if LiDestri had not signed the PPP.

## II.   THE SAC FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The SAC's Second Cause of Action asserts a claim based on 7-Eleven's purported breach of its "duty to act in good faith and make commercially reasonable efforts to create greater demand for the tea in 7-Eleven stores and their customers," which duty purportedly arose "[a]s a result of [7-Eleven and LiDestri's] contractual relationship." SAC ¶ 57-58. It is a verbatim repetition of the Second Cause of Action in LiDestri's Amended Complaint, which this Court previously dismissed as "duplicative of its breach of contract claim." Doc. 19 at 10. The Court should dismiss the renewed claim for that same reason.

Moreover, "[t]here can be no claim of breach of the implied covenant of good faith and fair dealing without a contract." *Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 63 (N.Y. App. Div. 1st Dept. 2012). LiDestri's implied covenant claim thus stands or falls with the purported oral agreement. And because the purported oral agreement is not actionable, neither is any implied covenant claim arising from that purported oral agreement.

14

165099572

## III.   THE SAC FAILS TO STATE A PROMISSORY ESTOPPEL CLAIM

The SAC's Third Cause of Action asserts a promissory estoppel claim based on 7-Eleven's purported guaranteed-purchase oral promise.  SAC ¶ 61.  But this alleged oral promise is fatally undercut by the PPP's express disclaimer that "[n]either 7-Eleven nor the Stores are obligated to purchase any minimum or ongoing quantity of Products under this agreement."  SAC, Ex. D ¶ 2.01.  "In New York a claim for promissory estoppel requires 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.'"  *R.G. Group*, 751 F.2d at 78.  "'[P]arties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract' ... because 'where the terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have *reasonably* relied on those statements as a matter of law.'"  *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (citations omitted, italics in original); *see Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014) (same).

The PPP's merger clause also bars the promissory estoppel claim because, when a subsequent written contract expressly disclaims prior oral promises, a plaintiff cannot satisfy either the "clear and unambiguous promise" requirement or

the "reasonable and foreseeable reliance" requirement. *E.g.*, *Wilson v. Dantas*, --

N.Y.S.3d --, 173 A.D.3d 460, at *2 (N.Y. App. Div. 1st Dept. 2019) ("Similarly,

the promissory estoppel and fraudulent inducement claims were correctly

dismissed because plaintiff could not have reasonably relied on the alleged oral

promise in light of the integration and amendment provisions of the Shareholders'

Agreement."); *Capricorn Investors III, L.P. v. Coolbrands Intern., Inc.*, 886

N.Y.S.3d 158, 159 (N.Y. App. Div. 1st Dept. 2009) ("The promissory estoppel

claim was properly dismissed because it was flatly contradicted by the parties'

written agreement which covered the same subject matter and expressly

superseded all other prior agreements and understandings, written and oral."); *R.G.*

*Group*, 751 F.2d at 79 (where "the parties' negotiations made it plain that any

promise or agreement at that time was conditional upon the signing of a written

contract," there "never was a 'clear and unambiguous promise,'" and no

promissory estoppel claim can lie).

## CONCLUSION

For the foregoing reasons, 7-Eleven respectfully requests that the Court

grant its motion to dismiss the first three causes of action of the Second Amended

Complaint.

165099572

Dated: August 1, 2019             Respectfully submitted,

                                  By:  */s/ James F. Speyer*
                                        James F. Speyer
                                  ARNOLD & PORTER KAYE
                                  SCHOLER LLP
                                  777 South Figueroa Street, 44th Floor
                                  Los Angeles, California 90017-5844
                                  Phone (213) 243-4000
                                  james.speyer@arnoldporter.com

                                  Matthew D. Grant
                                  250 West 55th Street
                                  New York, New York 10019-9710
                                  Phone (212) 836-8000
                                  matthew.grant@arnoldporter.com

                                  *Attorneys for Defendant 7-Eleven, Inc.*

165099572